UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ODELL BECKHAM, JR. | CIVIL ACTION NO. 18-1001 |
| Plaintiff, | |
| | SECTION "    " |
| VERSUS | |
| | JUDGE |
| SPLASH NEWS AND PICTURE AGENCY, LLC AND MILES DIGGS | |
| | MAGISTRATE |
| Defendants. | |

**COMPLAINT FOR**
**DECLARATORY RELIEF AND DAMAGES**

Plaintiff Odell Beckham, Jr. ("Beckham"), through his undersigned counsel, bring this action against Splash News & Picture Agency, LLC ("Splash") and Miles Diggs ("Diggs") (Splash and Diggs are sometimes collectively referred to as "Defendants"), and alleges as follows:

**INTRODUCTION**

1.   This lawsuit seeks declaratory relief against Defendants regarding their pervasive and coercive practice of photographing celebrities without their knowledge, selling those celebrity photographs to gossip websites and publications for profit, and then demanding payment from the celebrity for purported copyright infringement.

2.   On January 15, 2018, Splash sent a demand letter to Beckham alleging that Beckham infringed the copyrights of Splash by posting a photograph on Instagram of himself (from which he derived no profit and which post was not commercial in nature) that was

taken by Diggs ("Diggs"), a notorious paparazzi, and licensed by Splash to celebrity gossip websites like TMZ and the Daily Mail. *See* Exhibit 1, attached hereto.

3. Splash demanded payment from Beckham in the amount of $40,000 as "full and final settlement" of purported copyright infringement claims no later than January 29, 2017. *Id.*

4. Upon information and belief, Splash recently filed a lawsuit against singer, actress, and clothing designer Jessica Simpson in United States District Court for the Central District of California, alleging similar claims of copyright infringement because she posted a photograph of herself -- purportedly copyright protected by Splash -- on Instgram. *See* Exhibit 2.

5. Splash's lawsuit against Simpson demonstrates that a copyright lawsuit against Beckham may be imminent and that there is an actual case or controversy between Beckham and Defendants Splash and Diggs.

6. This lawsuit seeks a declaratory judgment of non-infringement of Splash's purported copyrights, and seeks monetary relief and other damages from Defendants for their violations of Beckham's right of publicity and right of privacy.

## THE PARTIES

7. Plaintiff Odell Beckham, Jr. is an individual with a principle domicile in Orleans Parish, Louisiana.

8. Defendant Miles Diggs, upon information and belief, is a resident of and domiciled in Hudson County, State of New Jersey.

9. Defendant Splash News & Picture Agency, LLC, upon information and belief, is a limited liability company organized under the laws of the State of Nevada and has its principal place of business in Los Angeles County, State of California.

**JURISDICTION & VENUE**

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(a) (original and exclusive jurisdiction over copyright actions) as to all claims brought under the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq*. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11. Additionally, this Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity of citizenship) as there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

13. This Court has personal jurisdiction over Defendants because, on information and belief, they are purposefully availing themselves of the privilege of conducting business activities within and with respect to the State of Louisiana by, *inter alia*, licensing purported copyrights for use within the State of Louisiana. Defendants have also purposefully directed activities, including those activities giving rise to the claims herein, in and towards the State of Louisiana.

14. Venue is proper in the Eastern District of Louisiana under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

**FACTUAL ALLEGATIONS**

A. **ODELL BECKHAM, JR'S CAREER AND CELEBRITY**

15. Odell Beckham, Jr. is a widely-recognized professional athlete in the National Football League ("NFL") with dedicated fans around the world. Throughout his

football career, Beckham has developed a highly sought-after personal brand that incorporates his athleticism, engaging personality, dynamic performances, trendy style, and charitable spirit. This personal brand is not only a reflection of Beckham's personal story but, also, brings real value to the products and services he sponsors and draws meaningful attention to the causes he supports.

16. Beckham showed signs of athleticism early in life, excelling at football (among other sports) and becoming a U.S. Army All-American while attending high school at Isidore Newman School in New Orleans, Louisiana.

17. In 2011, after graduating from Isidore Newman School, Beckham decided to follow in his parents' footsteps and attend Louisiana State University, where he played football and quickly gained a reputation as one of the most dynamic players in school history. Within a few seasons, Beckham gained national acclaim and was awarded the Paul Hornung Award as college football's most versatile player in 2013.

18. Beckham's accomplishments at the colligate level caught the eye of NFL teams and fans, alike, and he was drafted by the New York Giants in the first round of the 2014 NFL Draft.

19. In his first season with the New York Giants, Beckham had many memorable performances, setting franchise rookie records, completing "the Catch" (a now famous one-handed touchdown grab in his game against the Dallas Cowboys on November 24, 2014), earning the title of NFL Offensive Rookie of the Year, and attending that season's NFL Pro Bowl. Beckham only added to these accomplishments during the next three seasons, as he established himself of one of the premier wide receivers in the league.

20. As Beckham's career blossomed on the football field, he built the foundation for a successful business empire off the field by, among other things, being featured in top fashion magazines, creating his own clothing lines, appearing on popular television shows, securing sponsorship deals with top brands, and establishing a substantial social media presence. The success of these ventures both showcases the extraordinary investments Beckham has made in his image and reveals the value of his personal brand.

21. Beckham has also dedicated a great amount of time, energy, and money to charities that support breast cancer research, veteran outreach, and making children's dreams come true. For this reason, Beckham's image and personal brand do not only provide him with personal economic benefit but, also, allow him to drive value to important charitable causes.

      B.      **THE UNAUTHORIZED PHOTOGRAPHS**

22. On October 8, 2017, Beckham was at the high point of his NFL career when he started a televised game between the New York Giants and the Los Angeles Chargers. Tragically, Beckham suffered a horrific injury to his left ankle that caused him to leave the game early. Although, in his typical fashion, Beckham remained positive and upbeat about the challenges ahead, Beckham soon realized the injury would mean the end of his fourth NFL season.

23. Beckham underwent surgery to repair his ankle and endured a six-day hospital stay.

24. The purported copyright protected photographs attached to Splash's January 15 letter as Exhibit B (the "Photos") depict Beckham on or about October 14, 2017, the day after he had returned home from surgery in the hospital. *See* Exhibit 1, attached hereto.

1242868v.1

25. The Photos clearly demonstrate that Diggs secretly shot the Photos through a gate at Beckham's private New Jersey residence, with the aid of a telephoto lens, and without Beckham's knowledge or permission.

26. There is nothing creative or distinctive about the point-and-shoot, ambush-style Photos, except that they feature Beckham. Indeed, he had exited his home only for a brief moment to retrieve an item from his personal vehicle on his own property, while Diggs remained hidden, lying in wait to take the Photos.

27. Later that day, upon information and belief, Diggs sold or licensed the Photos to Splash.

28. In turn, Splash filed a copyright registration application (the "Application") covering the Photos with the United States Copyright Office.

29. Splash purchased the Photos from Diggs and applied to the Copyright Office for protection of those Photos without the knowledge or permission of Beckham.

30. Shortly thereafter, upon information and belief, Defendants licensed their purported copyrights to the Photos to gossip website hosts, including EHM Productions Inc. d/b/a TMZ ("TMZ"), having a website located at http://www.tmz.com/ ("TMZ's website"), and dmg media Limited d/b/a DailyMail.com ("DailyMail"), having a website located at http://www.dailymail.co.uk/ ("DailyMail's website"). Upon information and belief, such license agreements with TMZ (the "TMZ license") and DailyMail (the "DailyMail license") covered and granted the licensees the right to use the Photos nationally and worldwide, including in the State of Louisiana.

31. In accordance with the rights granted by Defendants under the TMZ license and the DailyMail license, upon information and belief, TMZ and DailyMail displayed

the Photos on TMZ's website and DailyMail's website, respectively, each of which is interactive, allows end-users to "share" content across social media platforms, is accessible to Louisiana residents, collects information from end-users and computing systems located in Louisiana, and uses behavioral targeting mechanisms to provide custom content and advertising to end-users located in Louisiana.

32. Splash's licensing of photographs of an injured Beckham not only exploits Beckham's image for personal financial gain but it is also patently gruesome.  Indeed, the copyright registration attached to the January 15 demand letter titles the pictures as "NY Giant Star Odell Beckham Jr. seen for the First time after Horrific Ankle Injury."  *See* Exhibit 1 and Exhibit A, attached thereto.

33. The only reason that the Photos have any value is because they depict Beckham.  Yet, Beckham received no compensation from Diggs or Splash.

34. The audacity of Splash News to demand payment from Beckham -- the very person who provided value to the Photos -- is shocking, reeks of bad faith, and emphasizes the utterly troll-ish behavior of Diggs and Splash.

35. Accordingly, Defendants have violated Beckham's right of publicity and right of privacy, stemming from the secret Photos taken of him in his private driveway. Splash's subsequent use of those unauthorized pictures constitutes unauthorized commercial appropriation and Beckham is entitled to damages stemming from Splash's actions.

36. Furthermore, Beckham's "sharing" of a single image of himself on Instagram (out of the 12 images purportedly subject to copyright protection) had no effect on the market for that particular photograph.  At the point that Beckham posted the image on October 26, 2017, Splash had already controlled the first public appearance of the Photos a full nine days

1242868v.1

earlier, on October 17, 2017 (according to its own copyright registration statement concerning date of publication).

37. Beckham's personal post of a single image from the Photos is consistent with his posting of other personal images of himself on October 10 and October 18, 2017, which images were taken in the hospital. Beckham's documentation of his injury, surgery, and ultimate return to professional football is in furtherance of his right to publicity.

### C. DEFENDANTS' PURPORTED COPYRIGHT CLAIMS

38. On January 9, 2018, nearly three months after the Photos were taken, Splash's Application was accepted and the Photos were registered by the United States Copyright Office (No. VA0002082127).

39. On January 15, 2018, Peter Perkowski, counsel for and on behalf of Splash, sent a letter to Beckham, c/o Daniel E. Davillier, titled "Unauthorized Use of Photographs Owned by Splash News and Picture Agency" ("Splash's Demand Letter"), in which Splash: (a) claims one or more of the Photos were displayed on Beckham's Instagram account; (b) claims such displays were "a violation of the U.S. Copyright Act, 17 U.S.C. § 106"; (c) details why it believes such displays were "not fair"; (d) acknowledges licensing the Photos to TMZ and DailyMail for use on their gossip websites; and (e) demands "the fair and reasonable sum of $40,000 as full and final settlement." *See* Exhibit 1.

40. In short, Splash attempted to extort $40,000 from Beckham for allegedly posting a picture of himself on his own social media account when that picture was licensed to websites that made it available for "sharing" across social media platforms, all almost *three months* after the alleged infringement occurred. These circumstances make clear that Splash was not satisfied with merely invading Beckham's privacy and exploiting his tragic injury and

celebrity status, it also saw fit to attempt to capitalize on his personal financial success and squeeze an exorbitant amount of money out of him directly.

41. Beckham is apparently not the first victim of Splash's predatory and distasteful tactics. On January 23, 2018, Splash filed a lawsuit in the United States District Court for the Central District of California against Jessica Simpson (a singer, actress, and clothing designer) and others claiming similar allegations of copyright infringement for the actress's alleged posting of pictures of herself on her social media accounts. *See* Exhibit 2. That lawsuit underscores the imminence of the potential harm to Odell Beckham, Jr. due to Splash's frivolous demands.

## CAUSES OF ACTION

### COUNT ONE
### DECLARATORY RELIEF
**Entitlement to a Declaratory Judgment Pursuant to 28 U.S.C. § 2201**

42. Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

43. Defendants allege that Beckham is liable for copyright infringement by sharing certain photos on his Instagram page.

44. Beckham denies that he can be held liable to Defendants for copyright infringement.

45. Beckham denies that Defendants are entitled to any amount of compensation that the Defendants have demanded for Beckham's purported copyright infringement.

46. Beckham is entitled to a declaratory judgment declaring that he has not infringed any copyright protection held by Defendants, and does not owe any compensation for his limited sharing of the Photos.

1242868v.1

## COUNT THREE
## INTRUSION ON SOLITUDE
**Violation of Common Law Privacy Tort of Intrusion on Solitude under New Jersey Law**

47. Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

48. By lying in wait and shooting the Photos using a telescopic lens through a privacy fence, in an attempt to capture Beckham's horrific ankle injury, Defendants are liable to Beckham for intrusion on solitude under New Jersey law, in an amount of damages to be determined by a jury.

## COUNT FOUR
## PUBLIC DISCLOSURE OF PRIVATE FACTS
**Violation of Common Law Privacy Tort of Public Disclosure of Private Facts under New Jersey Law**

49. Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

50. By lying in wait and shooting the Photos using a telescopic lens through a privacy fence, in an attempt to capture Beckham's horrific ankle injury, and sending and licensing the photographs to third parties for the purpose of publication, Defendants are liable to Beckham in tort for public disclosure of private facts, in an amount of damages to be determined by a jury.

## COUNT FIVE
## APPROPRIATION OF LIKENESS
**Violation of Common Law Privacy Tort of Appropriation of Likeness under New Jersey Law**

51. Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

52. Beckham is a celebrity athlete and his image and likeness have a unique monetary value that can only be exploited by him or by persons to whom he gives permission.

53. Diggs' taking and selling of photographs of Beckham to Splash, without Beckham's knowledge or consent, violates Beckham's common law right of publicity.

54. Similarly, Splash's licensing of unauthorized photographs of Beckham to gossip website hosts, including TMZ, DailyMail, and other gossip outlets, without Beckham's knowledge or consent, violates Beckham's common law right of publicity.

55. Defendants are liable to Beckham for these violations, in an amount of damages to be determined by a jury.

## DEMAND FOR JURY TRIAL

56. Beckham demands a trial by jury of this matter pursuant to Federal Code of Civil Procedure 38(b) for all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Odell Beckham, Jr. prays that the Court enter judgment awarding him the following relief:

1. A Declaratory Judgment finding that Beckham is not liable to Defendants for infringement under the Copyright Act;

2. A Judgment against the Defendants finding them liable to Beckham for common law claims of intrusion of solitude;

3. A Judgment against the Defendants finding them liable to Beckham for common law claims of public disclosure of private facts;

4. A Judgment against the Defendants finding them liable to Beckham for common law claims of appropriation of Beckham's likeness and violation of his common law rights of publicity;

5. A Judgment against the Defendants awarding Beckham damages for all violations found herein;

1242868v.1

      6.      A Judgment against the Defendants awarding Beckham's attorney's fees and costs; and

      7.      Such further relief as the Court deems just and equitable.

Dated:   February 1, 2018

Respectfully submitted,

*/s/ Lesli D. Harris*
Lesli D. Harris, 28070, T.A.
    lharris@stonepigman.com
Matthew S. Almon, 31013
    malmon@stonepigman.com
    Of
STONE PIGMAN WALTHER WITTMANN L.L.C.
909 Poydras Street, Suite 3150
New Orleans, Louisiana  70112
Telephone: (504) 581-3200

AND

Daniel Davillier, 23022
    ddavillier@davillierlawgroup.com
Charline Gipson, 32780
    cgipson@davillierlawgroup.com
Davillier Law Group, LLC
1010 Common Street, Suite 2510
New Orleans, Louisiana  70112
Telephone:  (504) 582-6998

*Attorneys for Odell Beckham, Jr.*